**CLARK GULDIN**
Attorneys At Law
20 Church Street – Suite 15
Montclair, New Jersey 07042
(973) 707-5346 (ph)
(973) 707-7631 (fax)
*Attorneys for Defendant Paragon Design Corp.*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PABLO BRUM, BRIANNA BULSKI, KJERSTI FARET, SARA M. LYONS, MARISA RAVEL, AND KATIE THIERJUNG,<br>　　　　Plaintiffs,<br><br>vs.<br><br>PARAGON DESIGN CORP., STEVEN MADDEN, LTD., AND ZULILY LLC,<br><br>　　　　Defendants. | **ELECTRONICALLY FILED**<br><br><br>Civil Action No. 18-cv-05399<br>(JMF/KNF)<br><br>**DECLARATION OF<br>PETER L. SKOLNIK, ESQ.** |

**I, PETER L. SKOLNIK, ESQ.**, declare:

1. I am Of Counsel to Clark Guldin, Attorneys at Law, counsel for Defendant Paragon Design Corp. ("Paragon("Paragon"). I make this declaration in opposition to plaintiff's motion to enforce settlement.

2. On October 24, 2018, the Court conducted a settlement conference with all counsel and all parties represented. I attended the conference with Mr. Jae Kim, President of Paragon.

3. During his opening presentation that the Court requested – of "the things counsel believe I need to know" (Plaintiffs' Exhibit A at 5-6) – Plaintiffs' counsel, Andrew Gerber, directed his comments to Mr. Kim. I asked him to please address me. He refused, stating he wanted Mr. Kim to hear him and to understand Plaintiffs' position. He continued his presentation staring directly at Mr. Kim.

4. The day prior to the conference, I had asked Mr. Kim to confirm that the sales report he had sent me, and that I had sent to Mr. Gerber, was complete and accurate. Mr. Kim checked again with his employees, and assured me it was.

5. Mr. Gerber acknowledged that I had sent him a report purporting to be a complete and accurate account of all of Paragon's sales of the "pins" at suit. But he then announced that he had "proof" that the report was deceitful. I do not recall if he used the word "untrue," or "false" or "a lie." But his message was clear. He was telling Mr. Kim, me and the Court he possessed "proof" of deception. He did not specify the nature or source of his alleged "proof," or the size and amount of any discrepancy he claimed to have discovered.

6. Upon conclusion of the joint discussion in chambers, the parties began a round of individual discussions with the Court in an attempt to forge a mutually agreeable settlement. Although Paragon's sales of the "pins" had grossed $5,062, netting about $1,200 after manufacturing a shipping costs, to end the dispute, and to reach finality and "repose," Paragon agreed to pay Plaintiffs $35,000.

7. After the basic terms of settlement among Plaintiffs, Paragon and co-defendant zulily were agreed upon, the Court conducted an on-the-record session in open court during which Mr. Gerber read those basic terms into the record. (*See* Plaintiffs' Exhibit A). Also during the proceedings in open court, Mr. Kim requested the opportunity to once again confirm with his office that the sales report Mr. Gerber intended to attach as an exhibit to a settlement agreement were complete and accurate. (*See* Plaintiffs' Exhibit A at 7).

8. Those basic terms – recorded solely in Mr. Gerber's own handwritten notes – were not reduced to a writing available for Paragon's scrutiny; no written memorandum was prepared or signed. Mr. Gerber undertook to draft and circulate a proposed settlement agreement. The first time I saw Mr. Berger's terms reduced to writing was when he filed Plaintiffs' Exhibit A to his motion on October 30, 2018.

9. This motion resulted not from Paragon's request for an *additional* material term, but to *clarify* an existing material term, and from Mr. Gerber's refusal to either stand by or deny his representation he had "proof" that Paragon was lying.

10. It is a truism that the core of a settlement agreement is the release of claims. Paragon reasonably anticipated that the settlement agreement Mr. Gerber was preparing would contain – if not a general release – at least a specific release for the claims at suit, and provision for a dismissal with prejudice. As my email exchange with Mr. Berger makes clear, that was not and is not his intent. The full email exchange is attached as **Exhibit 1.**

11. By way of background to that exchange, immediately upon leaving the courthouse, Mr. Kim explained that he was extremely concerned and upset that Mr. Gerber had claimed to have "proof" of alleged deception by Paragon. Mr. Kim was both upset to have been called a liar before the Court, and concerned that if Mr. Gerber in fact had proof of errors in Paragon's sales reports, either his company's systems were inadequate and unreliable, or that his employees had engaged in wrongdoing. Mr. Kim repeated those concerns in an email to me on the evening following the conference. What "proof," he wondered, could Mr. Berger have? I assured him I would address the issue with Mr. Berger. *See* the accompanying Declaration of Jae Kim.

12. I contacted Mr. Berger the next day, October 25, saying:

> Andrew:
> In your initial presentation to Judge Fox you represented that you can prove the sales data I sent you is incorrect. You did not state if you believe your "proof" establishes an error of $1 or $1 million.
>
> Paragon has now twice confirmed it is correct. By requiring that the report I sent you be attached to the settlement agreement, I construe you to have accepted its accuracy.
>
> Nevertheless, since the agreement permits you to sue and collect attorney's fees for breach, I am concerned that you might intend to deny you have accepted that the report is accurate, and file another suit against Paragon using whatever "proof" you believe you have to try to establish breach.
>
> Paragon needs this settlement to establish repose. Accordingly, before I will permit them to execute a settlement agreement, I must receive either (1) whatever proof

3

you believe establishes inaccuracy of the sales report, or (2) your confirmation that the settlement agreement will contain language confirming plaintiffs' acceptance of the report's accuracy as final and equivalent to res judicata.

13. To my astonishment, although he had represented he had "proof" Paragon's sales figures were inaccurate, Mr. Berger replied "We have no idea if the numbers provided by your client are accurate or not."

14. Aggravated by Mr. Gerber's refusal to answer a straightforward question, or even to deny he had lied to the Court, I expressed my frustration intemperately, for which I apologize. I wrote: "You stated you have proof of inaccuracy. I'm asking you to put up or shut up. Saying you "have no idea" — when you represented to the court you have proof — isn't acceptable. If you have proof, reveal it."

15. Mr. Gerber refused to provide "anything," claimed falsely that the terms had all been discussed "at length," accused me of rescinding the agreement, and stated an intention to "inform the Court." I replied "I am saying you made a representation to the court that I'm requiring you to stand by or withdraw." Believing that a conference call could resolve the issue, I told Mr. Berger "I am perfectly willing to address the matter further with Judge Fox."

16. I told Mr. Berger (emphasis added):

> You represented to the court that you possess proof that Paragon's sales figures are a lie — *not that you might later discover such proof, but that you already have it.*
>
> *If you then agreed to a settlement with the intention to later assert a breach using proof you already have, your agreement is a sham.*
>
> If the draft agreement you prepare leaves this possibility open, it will not be signed by Paragon.

17. Rather than resolve the issue or agree to a conference, Mr. Berger escalated the dispute by moving to enforce the bogus agreement he is trying to engineer, with the patent intent to reopen his claims based upon "proof" he has refused to disclose.

18. Confirmation of the disingenuous nature of Mr. Berger's proposed terms was exposed in the written version that Paragon first saw in Plaintiff's Exhibit A at 8. After stating that

4

Paragon "represents and warrants" that its sales report "is complete and accurate as to sales of the pens [sic] at issue" and "will be attached to the settlement agreement as Exhibit A," Mr. Gerber proposed a subtly equivocal "release":

> Plaintiffs release Paragon for conduct to the effective date of the settlement agreement as to the items circled *and sale identified for those items* in the document attached as Exhibit A. (emphasis added)

19. In other words, the release extends only to the *sales* identified on Paragon's report, which Mr. Gerber had insisted were false.

20. Paragon maintains that for a litigant to feign settlement, while holding undisclosed "proof" that the very premise of the settlement is deceitful, is an unethical charade.  The Court should not countenance such a settlement, much less "enforce" it.  Paragon respectfully submits that all of the case law cited in Plaintiffs' motion is inapposite for at least two reasons: *first*, because Paragon is seeking only to clarify the scope and intent of the settlement agreement's release, not to require "additional substantive term"; and *second*, because this motion should be adjudicated on the facts, rather than inapplicable law.

## DECLARATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true.

s/s Peter L. Skolnik  
Peter L. Skolnik (PLS 4876)

Dated: November 13, 2018